IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HAROLD V. GILMORE, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION H-11-2676 |
| | § | |
| RICK THALER, | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM OPINION AND ORDER**

Petitioner, a state inmate proceeding *pro se*, seeks habeas relief under 28 U.S.C. § 2254 challenging his conviction for aggravated robbery with a deadly weapon. Respondent filed a motion for summary judgment (Docket Entry No. 15), to which petitioner filed a response (Docket Entry No. 16). Petitioner's subsequent "Declaration in Opposition" to the motion for summary judgment (Docket Entry No. 19), filed without leave of court over ninety days after respondent filed the motion for summary judgment, is ORDERED STRICKEN FROM THE RECORD.

Based on consideration of the pleadings, the motion and response, the record, and the applicable law, the Court GRANTS the motion for summary judgment and DISMISSES this case for the reasons that follow.

*Procedural Background and Claims*

Petitioner was convicted of aggravated robbery with a deadly weapon and sentenced to forty years incarceration in Harris County, Texas. The conviction was affirmed on appeal.

*Gilmore v. State*, 2007 WL 2089294 (Tex. App.—Houston 2007, pet. ref'd). The Texas Court of Criminal Appeals refused discretionary review and denied petitioner's application for state habeas relief. *Ex parte Gilmore*, WR 72,551-04.

Petitioner raises the following claims in the instant petition:

(1) Legal insufficiency of the evidence;

(2) Denial of confrontation when the State failed to call alibi witnesses;

(3) Ineffective assistance of trial counsel in failing to investigate, interview, and present alibi witnesses;

(4) Trial court error in:

    (a) allowing into evidence "uncertified" enhancement convictions;

    (b) failing to define "beyond a reasonable doubt" in the jury charge;

(5) Improper bolstering of the complainant with hearsay evidence; and

(6) Denial of a fair trial due to cumulative error.

Respondent argues that these grounds lack merit and/or are unexhausted and procedurally barred from consideration by the Court.

### *Factual Background*

The state court of appeals set forth the following statement of facts in its opinion on direct appeal:

> At trial, the State contended that in the early morning hours of May 28, 2005, appellant and Leroy Collins [FN. The State tried appellant and Collins together as co-defendants.] his co-worker at the 99 Cent Store on Scott Street in Houston, Texas, robbed the store and seriously injured their co-worker and the

2

complainant, Liaquat Ali, as Ali worked the night shift. The State called five witnesses. Sergeant R.C. Speckman testified that around 5:45 a.m. on May 28 he was dispatched to the 99 Cent Store. Sergeant Speckman looked through the store's glass front doors and saw Ali lying face down in a pool of blood, and Sergeant Speckman immediately called for backup and an ambulance. Because he did not see a sign of forced entry at the front doors, Sergeant Speckman searched the premises for a point of entry and found on the north side of the building a fenced in area whose door had a chain with a broken lock, which appeared to be a 'fresh' sign of forced entry. Sergeant Speckman then entered the building to perform a cursory search for possible suspects inside and observed an open cash register, a pair of scissors on the floor and an open package containing items appearing to match the scissors, and a makeshift sleeping pallet near where Ali laid, whose pillow contained blood. After an ambulance team transported Ali to the hospital, Sergeant Speckman and two officers who had arrived conducted a more thorough search of the premises. They found a change tray by the front of the building but no suspects. Sergeant Speckman ultimately called the homicide division because he thought Ali's injuries were serious, and he explained that the homicide division handles cases that involve seriously injured victims.

The State next called Sergeant Glen Riddle of the Houston Police Department Homicide Division Crime Scene Unit, who testified that he arrived on the scene at 7:25 a.m. to document, photograph, collect, and process evidence. Sergeant Riddle corroborated Sergeant Speckman's description of the north side door to the fenced in area as having signs of forced entry, namely a bent padlock, and his general description of the scene inside. He further testified that inside the fenced area, there was a freshly damaged door which opened directly into the building, and the damage was likely created with a loud noise. In addition to Sergeant Speckman's description of items inside the building, Sergeant Riddle also found a two-and-a-half foot long steel pole, a section of a wooden two-by-four, and a package of beer on the floor near the scissors. Although Sergeant Riddle collected five cards with fingerprints lifted from the steel pole and various other items at the scene, none of the fingerprints lifted matched appellant's or other persons' in the case. He further noted that there was blood splattered on display cases near the sleeping pallet, which indicated that a blow or injury to the head had been received near the pallet and supported the theory that Ali was struck while on the ground. Sergeant Riddle also testified that about thirty minutes into his investigation, officers located Collins in a room in the back of the store. Sergeant Riddle additionally

recalled that appellant was one of several witnesses officers spoke with at the scene, but did not know the substance of the discussion.

The State then called Ali, who testified that he began working at the 99 Cent Store for the owner and his friend, Mohammad Pirzada, about three months before the incident. Ali's shift lasted from 8:30 p.m. to about 6:30 a.m., and after midnight, he locked the front doors and never opened or allowed customers inside the store; customers could request and pay for items only by using a window on the side of the building. Ali explained he sometimes slept on the pallet during his shift and that customers would knock on the window for service. On cross-examination, in an attempt to impeach Ali, defense counsel referenced a store cash register receipt from the night in question allegedly indicating beer was sold after midnight [FN. Appellant did not admit a copy of this receipt at trial.], but Ali denied ever selling beer to customers after midnight because it was against the law.

Ali testified that on the night of the incident, Collins came to the store around 11:00 p.m. and that he gave Collins a television, who then retired to a back room in the store where he sometimes slept. Then, around 1:00 a.m., as he placed money into the cash register after a sale, Ali saw appellant and Collins in the cash register area. Collins demanded to see Ali's hands, and Ali complied, putting up his hands. According to Ali, appellant then hit him on the left side of his head with a steel pipe. Ali also saw Collins holding a 'knife or something' and observed him 'go into the register.' After appellant struck him again in the head with the pipe, Ali fell to the floor unconscious. On cross-examination, Ali offered conflicting testimony as to whether he let appellant in the front door of the store at 1:00 a.m. or whether he saw appellant for the first time at 1:00 a.m. and did not know how appellant entered the store because Ali had locked all the doors.

Ali returned home from the hospital after seventeen or eighteen days, and he claimed he told Pirzada sometime in early June that appellant and Collins had injured him. He stated that police came to ask him some questions the day after he left the hospital, and he told them he was not ready to talk. At their next meeting, which he said was the next day, the police showed him some pictures, and he identified appellant's picture as the person who had hit him. On cross-examination, Ali gave conflicting accounts as to whether he received medicine in the hospital, and admitted he continued taking medicine 'for my safety of my head' at the time of trial.

4

The State next called Pirzada, who testified that appellant worked as a security guard and handyman for the store, and stated that both appellant and Collins had keys to the store and could come and go from the store as they pleased. He stated that appellant and Collins often complained that Ali watched over them, as Ali had caught them stealing from the store before, and that appellant and Collins had asked Pirzada to ask Ali to not interfere in their work. Pirzada also testified that he saw appellant speaking with police at the scene. In the weeks following the incident, Pirzada visited Ali in the hospital and at his home, and, after four or five visits, Ali told him appellant and Collins had hit Ali. Pirzada maintained that Ali consistently named appellant and Collins as the perpetrators, but, since Ali did not give any details, Pirzada waited to contact anyone about what Ali had revealed to him. Thereafter, when Ali regained his 'full conscious[ness],' he told Pirzada the details of what appellant and Collins did, and Pirzada then contacted the police with this information. On cross-examination, Pirzada maintained that Ali could not and would not sell beer from the store after midnight, but he admitted seeing a receipt from the night of the incident indicating that someone sold beer after midnight.

The State finally called Officer A.D. Brown, a detective for the Houston Police Department Homicide Division who was dispatched to the scene. Officer Brown corroborated the other officers' descriptions of the crime scene and testified that he spoke with appellant and Israel McKinney, a witness, at the scene. According to Officer Brown, appellant kept repeating 'Where is Leroy?' McKinney told Officer Brown he saw four black males in a blue Ford Expedition getting beer at the store at 2:00 a.m. and gave Brown specific descriptions of their physical attributes and clothing. McKinney said later, at 4:40 a.m., he saw the same Expedition parked by the back door of the store and the same four black males kicking and tearing at the gate, and he then heard a loud, shotgun-like bang and saw two of them go into the store.

Based on McKinney's statements, Officer Brown searched for these or other suspects for three weeks to no avail. Officer Brown then visited Ali on June 17, 2005 after he came home from the hospital. Although Ali did not feel well and did not discuss the case in detail, both Ali and Pirzada did inform Officer Brown they thought appellant was the perpetrator. Ali, however, did not see appellant in any of the photos Brown showed him. On June 28, 2005, Brown returned to Ali's house with a photo lineup containing appellant's picture, asked Ali if he recognized anyone in the lineup, and Ali recognized appellant's

5

picture. Ali then gave Brown his account of what happened, which largely tracked Ali's testimony at trial; but, Brown specifically noted that Ali told him he saw Collins taking money out of the cash register. Brown additionally testified that a metal pipe is considered a deadly weapon capable of causing serious bodily injury or death. On cross-examination, Officer Brown stated that, although Ali told police he had not sold beer after hours, the receipt indicated someone at the store had in fact done so the night of the incident, which gave McKinney's story more credibility. He also admitted he was 'somewhat stunned' by Ali's implication of appellant on June 28 and conceded that all other information to date pointed to the suspects McKinney described. Officer Brown further noted, however, that McKinney did not provide any information regarding the attack itself.

In his case in chief, appellant called only one witness, Sergeant W.P. Booth of the Houston Police Department Homicide Division. Sergeant Booth spoke with appellant at the scene, and, when Booth informed appellant that someone had been injured inside the store, appellant replied, '[W]ell, where's Leroy?' After Collins had been discovered in the store, Sergeant Booth asked appellant for his contact information, which proved accurate.

The jury convicted appellant of aggravated robbery, and the trial court sentenced him to forty years' confinement. Appellant now claims the evidence is legally and factually insufficient to support his conviction and to prove the prior convictions used to enhance his sentence.

*Gilmore*, 2007 WL 2089294, at *1–3.

### *The Applicable Legal Standards*

*Habeas Review*

This petition is governed by the applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U.S.C. § 2254. Under the AEDPA, federal habeas relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication of the claim was contrary to clearly established federal law as

determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000); 28 U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court or if it confronts a set of facts that are materially indistinguishable from a Supreme Court decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7–8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id*. at 411.

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceedings. *Miller-El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the

7

presumption of correctness by clear and convincing evidence. *Id*. at 330–31; 28 U.S.C. § 2254(e)(1).

*Summary Judgment*

In deciding a motion for summary judgment, the district court must determine whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the summary judgment evidence, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56. Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software*, *Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). While summary judgment rules apply with equal force in a section 2254 proceeding, the rule only applies to the extent that it does not conflict with the federal rules governing habeas proceedings. Therefore, section 2254(e)(1), which mandates that a state court's findings are to be presumed correct, overrides the summary judgment rule that all disputed facts must be construed in the light most favorable to the nonmovant. Accordingly, unless a petitioner can rebut the presumption of correctness of a state court's factual findings by clear and convincing evidence, such findings must be accepted as correct by the federal habeas court. *See Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

### *Insufficiency of the Evidence*

Petitioner asserts that the evidence is insufficient to support the conviction. In reviewing the sufficiency of the evidence, the standard for federal habeas review is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Under this standard, the jury may disregard any evidence it chooses to disregard, as it is the "responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts." *Id*. Any contradictory testimony does not affect the validity of the guilty verdict. *Id*. The evidence can be sufficient to support a conviction under *Jackson* even when it also supports a claim of innocence. *See Gibson v. Collins*, 947 F.2d 780, 783 (5th Cir. 1991).

The intermediary state appellate court reviewed the legal sufficiency of the evidence under *Jackson* and found it sufficient to support petitioner's conviction, as follows:

> A person commits robbery if, in the course of committing theft and with intent to obtain or maintain control of the property, the person (1) intentionally, knowingly, or recklessly causes bodily injury to another or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. See TEX. PEN. CODE ANN. § 29.02(a). The offense becomes aggravated if the person uses or exhibits a deadly weapon. A 'deadly weapon' is (1) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury or (2) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury. Appellant contends the State relied solely on Ali's testimony to establish the elements of robbery. He maintains that we should review such testimony with 'great caution' because of its disjointed and contradictory nature and asserts that his attack on Ali's credibility at trial created reasonable doubt sufficient

9

to undermine the jury's verdict. In support of his legal and factual sufficiency challenges, appellant points to the following evidence:

- The cash register sales receipt allegedly proving the sale of beer in violation of the TABC, which contradicts Ali's testimony that he did not sell beer after hours;

- Evidence that two independent witnesses saw the 99 Cent Store's doors open after hours, which contradicts Ali's testimony that he closed and locked the front door at midnight;

- Mark Watson's and McKinney's observations that the front door to the store was open after midnight, which contradicts Ali's statement that he set the store's alarm when he closed and locked the doors;

- The five fingerprint cards lifted from the evidence failed to connect appellant to the offense;

- The lack of scientific evidence connecting appellant to the offense, namely the lack of blood evidence;

- Ali's failure to immediately identify appellant, whom Ali personally knew, to the police officers when they visited Ali's home on June 17, 2005, several weeks after the robbery;

- McKinney's observation that four black males at the store attempted to gain entry on the north side of the store;

- Watson's statements to the police that he observed these four individuals getting beer after hours at the store;

- Appellant voluntarily approached police officers responding at the scene to inquire about his friend, Collins, who was asleep inside the store, which appellant claims is 'atypical' behavior for someone who had committed an aggravated robbery; and

- Appellant complained about Ali while working at the store, which suggests a possible motive for Ali to identify appellant as the robber.

10

>We find appellant's contentions lack merit for several reasons. First, in imploring us to view Ali's testimony with 'great caution' and in maintaining that his attack on Ali's credibility created reasonable doubt, appellant essentially asks us to reevaluate the jury's credibility determinations, and we decline to substitute our own judgment for that of the jury or substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony. Second, although Ali's testimony was at times contradictory regarding certain details – including, for example, the dates of his meetings with the police and whether he took medication for his head injury – his testimony regarding his identification of the perpetrators and the details of the incident was substantially corroborated at trial by Officer Brown and Pirzada. Third, the lack of fingerprint or scientific evidence does not in itself establish that appellant's conviction was supported by insufficient evidence, as a conviction may be based on the testimony of only one eyewitness. Fourth, regarding the eyewitness observations of four other possible suspects at the scene, the jury was free to determine the weight to give to this evidence, and we cannot say this evidence outweighs the evidence of appellant's guilt, namely Ali's detailed recollection of the events, which was corroborated by testimony and some physical evidence, and Ali's identification of appellant as the perpetrator. Fifth, as to Ali's alleged failure to 'immediately' identify appellant as the perpetrator to Officer Brown on June 17, 2005, we note that Ali did in fact identify appellant to Officer Brown during the course of the meeting, and, in any case, even a total failure to identify the defendant on one occasion goes only to the weight of that person's testimony.
>
>Based on our review of the record and according appropriate deference to the jury's determinations, we conclude that a rational trier of fact could have found the essential elements of aggravated robbery beyond a reasonable doubt. Viewing the evidence in a neutral light, we further conclude that the evidence of guilt is not so weak that the verdict is clearly wrong or manifestly unjust or that the verdict is against the great weight and preponderance of the evidence. We overrule issues one and two.

*Gilmore*, at *4–6 (citations, footnotes omitted).

The evidence set forth by the state appellate court in its opinion affirming the conviction is itself enough to allow a rational trier of fact to convict petitioner of the

allegations in the indictment and jury charge, and the evidence presented at trial was enough to defeat a legal sufficiency challenge in a Texas appellate court under the *Jackson* standard. Moreover, an independent review of the trial record reveals sufficient evidence under *Jackson* to sustain the jury's verdict.

Respondent is entitled to summary judgment dismissal of petitioner's habeas challenge to the sufficiency of the evidence.

### *Ineffective Assistance of Trial Counsel*

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. U.S. CONST. amend. VI. A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance. *Id.* at 687. The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was

the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland*, 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 694. To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled. *Id.*

Petitioner claims that trial counsel was ineffective in failing to investigate, interview, and present his alibi witnesses. In his affidavit submitted to the trial court on state habeas review, trial counsel testified, in relevant part, as follows:

> [Petitioner] gave me no alibi witnesses. He did say that the morning after the offense, a guy named 'Butch' came over and told him that Ali (the complainant) was lying on the floor at the store. He gave my investigator a possible place to find 'Butch,' but the investigator was unable to find him. [Petitioner] also told me and my investigator that Michelle Coleman had seen everything. She is a prostitute who 'hangs out' at the Conoco Station at Corder and Scott between 6 and 7 in the morning. My investigator made

> several trips to the Conoco Station and asked around in that area but was unable to locate her.
>
> * * * *
>
> In this case, I did not have an address for certain of the witnesses we sought to find. [Petitioner] gave me and my investigator only an area of town in which to look for these witnesses. These are people who are transient, are on the street and who, like Michelle Coleman, are committing crimes to live. So, I had no way to issue an attachment. I had not had the opportunity to interview these witnesses, nor did my investigator.

*Ex parte Gilmore*, pp. 131–32. The trial court found that the facts asserted in trial counsel's affidavit were true and credible, and made the following findings:

> 9. According to the credible affidavit of [trial counsel], counsel spoke with the applicant, reviewed the State's file, met with an investigator, and had the investigator follow up in a number of ways.
>
> 10. The applicant fails to demonstrate that, as a whole, counsel failed to investigate or that his investigation fell below an objective standard of reasonableness and that but for the alleged deficiency a reasonable probability exists that the result of the proceeding would have been different.
>
> * * * *
>
> 18. According to the credible affidavit of [trial counsel], the applicant provided no alibi witnesses.
>
> 19. The applicant fails to demonstrate that counsel failed to speak with alibi witnesses and that but for the alleged deficiency a reasonable probability exists that the result of the proceeding would have been different.
>
> 20. According to the credible affidavit of [trial counsel], the applicant did provide counsel with information on witnesses who might have information other than alibi witnesses.

14

\* \* \* \*

>  53.  The applicant fails to demonstrate that he received constitutionally ineffective assistance of counsel.

*Id*. at 137–138, 141. The Texas Court of Criminal Appeals relied on these findings in denying habeas relief. *Id*., at cover.

Petitioner presents no probative summary judgment evidence regarding the existence, proposed testimony, and availability of an alibi witness, or that the testimony would have been material and beneficial to the defense. *See Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) ("To prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."). Here, petitioner does nothing more than allege that an unidentified "guy named Butch" told him Ali had been lying on the floor, and that a prostitute named Michelle Coleman at a gas station "had seen everything." This is insufficient to meet his burden of proof under *Day* and Strickland. See *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) (holding that, absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition, unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value). Moreover, petitioner presents no probative summary judgment evidence controverting trial counsel's testimony that his

15

investigator had attempted to find "Butch" and Michelle Coleman using the information provided by petitioner, but was unable to locate them. Petitioner establishes neither deficient performance nor prejudice under *Strickland*.

The state courts denied relief on this claim. Petitioner fails to show that the state courts' determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment on this claim.

### *Improper Bolstering of Complainant*

Petitioner complains that the State improperly bolstered the complainant's testimony with the use of inadmissible hearsay testimony. Respondent counters that, because petitioner failed to raise this issue on direct appeal, it has been procedurally defaulted.

In rejecting on collateral review petitioner's complaint that the State improperly elicited hearsay testimony at trial, which is the first component of petitioner's claim, the trial court found that the claim was a "record claim" which could have been raised in the trial court and on direct appeal and, therefore, should not be considered on habeas. *Ex parte Gilmore*, p. 142. The Texas Court of Criminal Appeals relied on this finding in denying habeas relief. Accordingly, the claim is procedurally defaulted.

The Fifth Circuit Court of Appeals recognizes that this procedural rule – that record-based claims not raised on direct appeal will not be considered in habeas proceedings – is an adequate state ground capable of barring federal habeas review. *See Busby v. Dretke*,

359 F.3d 708, 719 (5th Cir. 2004). Thus, where a state court has explicitly relied on a procedural bar, a state prisoner may not obtain federal habeas relief absent a showing of good cause for the default and actual prejudice that is attributable to the default, or that the federal court's failure to consider the claim will result in a miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995). A miscarriage of justice in this context means that the petitioner is actually innocent of the crime of which he was convicted. *Sawyer v. Whitley*, 505 U.S. 333, 339–40 (1992); *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001). Petitioner fails to allege and show good cause and prejudice for his procedural default, and respondent is entitled to summary judgment on this issue.

### *Denial of Confrontation*

Petitioner asserts that his right to confront witnesses was denied when the State used written statements at trial instead of calling the individuals as witnesses. Petitioner did not raise this issue on either direct appeal or state collateral review. As with petitioner's earlier claim regarding hearsay and improper bolstering, this claim is unexhausted, procedurally defaulted, and barred from consideration by the Court at this juncture. *See Nobles v. Johnson*, 127 F.3d 409, 423 (5th Cir. 1997) (finding unexhausted claim, which would be barred by the Texas abuse of the writ doctrine if raised in a successive state habeas application, to be procedurally defaulted and barred). As petitioner again fails to allege and

17

show good cause and prejudice for his procedural default, respondent is entitled to summary judgment on this issue.

### *Trial Court Error*

Petitioner asserts that the trial court erred in allowing the admission of "uncertified" enhancement convictions at trial. Respondent correctly asserts that the issue is procedurally defaulted because petitioner failed to present it to the Texas Court of Criminal Appeals in his petition for discretionary review. *Coleman*, 501 U.S. at 750; *Amos*, 61 F.3d at 338. As discussed above, petitioner fails to demonstrate good cause and prejudice for his procedural default, and respondent is entitled to summary judgment on this issue.

Petitioner further claims that the trial court erred when it failed to include a clear definition of the phrase "beyond a reasonable doubt" in the jury charge. This claim is properly before the Court. However, as found by the trial court on collateral review:

> 54. A trial court is not required to give a definitional instruction on the phrase 'beyond a reasonable doubt.' *Paulson v. State*, 28 S.W.3d 570, 573 (Tex. Crim. App. 2000).
>
> 55. The applicant fails to demonstrate that he is entitled to habeas relief as a result of the trial court giving no definitional instruction on the phrase 'beyond a reasonable doubt.'

*Ex parte Gilmore*, p. 142. The Texas Court of Criminal Appeals relied on these findings in denying habeas relief.

Petitioner provides the Court no federal authorities establishing that the trial court was required to define "beyond a reasonable doubt" in the jury charge, or that absence of the

definition violated his federal constitutional rights. Petitioner fails to show that the state courts' denial of habeas relief was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court. *Williams*, 529 U.S. at 404-05. Respondent is entitled to summary judgment on this issue.

### *Cumulative Error*

Petitioner argues that, although any one of these constitutional errors standing alone may not warrant the granting of habeas relief, their cumulative effect denied him a fair trial. However, because this Court has rejected petitioner's habeas grounds, there are no errors of a constitutional dimension for which a cumulative effect may be considered. Respondent is entitled to summary judgment dismissal of this habeas claim.

### *Conclusion*

Respondent's motion for summary judgment (Docket Entry No. 15) is GRANTED. The petition for a writ of habeas corpus is DENIED, and this case is DISMISSED WITH PREJUDICE. A certificate of appealability is DENIED. Any and all pending motions are DENIED AS MOOT.

The Clerk will provide copies of this order to the parties.

Signed at Houston, Texas on April 10, 2012.

Gray H. Miller
United States District Judge